**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| RITA CLINTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. A. No. 19-01674 (RMC) |
| ) | |
| JAMES RICHARD PERRY, in his official ) | |
| Capacity as Secretary of the United States ) | |
| Department of Energy ) | |
| ) | |
| _____ Defendant. ) | |

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR**
**SUMMARY JUDGMENT**

Defendant United States Department of Energy ("DOE" or "Defendant" or "Agency"), respectfully moves the Court, pursuant to Federal Rule of Civil Procedure ("Rule") 12 (6), to dismiss all claims raised in Plaintiff's Complaint for failure to state a claim or, in the alternative, for summary judgment pursuant to Rule 56 because there is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law.  In support of this motion, the Court is respectfully referred to the accompanying memorandum of points and authorities, and the attached exhibits.  A proposed Order consistent with this motion is attached.

Respectfully submitted,

JESSIE K. LIU, DC Bar # 472845
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, DC Bar # 924092
Chief, Civil Division

/s/_____
PATRICIA K. MCBRIDE
Assistant United States Attorney
Civil Division
555 4th Street, NW, Room E-4106

Washington, DC 20530
Tel: 202.252.7123
Fax: 202.252.2599
Email: patricia.mcbride@usdoj.gov

*Attorneys for Defendant*

# <u>TABLE OF CONTENTS</u>

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

**SUMMARY OF ISSUES**.....…...…………………………………………………1

**BACKGROUND**…………...………………………………………………………3

**LEGAL STANDARD**..………….…………………………………………………3

    **Rule 12(b)(6) – Dismissal for Failure to State a Claim**………………………...3

    **Rule 56 – Summary Judgment**……………………………………………………4

**ARGUMENT**………...…..……………………………………………………………5

    **I.**    **Plaintiff Fails to State a Hostile Work Environment Claim
        as a Matter of Law** ……………….…………………………………..…5

        **A.**  **Plaintiff's Allegations are Insufficient to Permit an Inference
             of discrimination**……………………………………………………...6

        **B.**  **The Conduct that Plaintiff Complains of is Insufficient as a
             Matter of Law to Constitute an Objectively Hostile Work Environment**...8

    **II.**    **DEFENDANT HAD LEGITIMATE, NON-DISCRIMINATORY,
          NON-RETALIATORY REASONS FOR ITS ACTIONS** …………….…….12

        **A.**  **Event 1 – Plaintiff Alleges Plaintiff Was Asked by her Supervisor
             to Draft an Expression of Interest Announcement**………………………..12

        **B.**  **Event 2 - Plaintiff Alleges Her Supervisor Delayed and Denied
             Plaintiff's Detail**………...……………………………………………...13

        **C.**  **Event 3 – Plaintiff Alleges Her Supervisor Investigated
             Plaintiff's Email Account Without Plaintiff's Knowledge**………………..14

        **D.**  **Event 4 – Plaintiff Alleges an Employee in Plaintiff's Office
             Was Detailed to Another Office**…………………………………………14

        **E.**  **Event 5- Plaintiff Alleges She Was Falsely Accused
             of Implementing a Change to the ePerformance System**…………………15

i

**F. Event 6 – After Receiving a Notice of Proposed Removal, Plaintiff  Alleges She Was Escorted from the Building During the Middle of the Day Rather Than the End of the Day**…………15

**G. Event 7 – Plaintiff Alleges her Supervisor Failed to provide Plaintiff with Performance Standards and a Performance Plan for Fiscal Year 2017**………………………………………………16

**H. Event 8 – Plaintiff Alleges her Supervisor Undermined Plaintiff's Ability to Manage the Employees under Plaintiff's Supervision**………………………………………………16

**I. Event 9 - DOE Allegedly Challenged Plaintiff's Claim for Unemployment Benefits**……………………………………...17

**CONCLUSION** ………………………………………………………17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Pages**

*Aka v. Wash. Hosp. Ctr.*,
   156 F.3d 1284 (D.C. Cir. 1998) ............................................... 5

*Aman v. Cort Furniture Rental Corp.*,
   85 F.3d 1074 (3d Cir. 1996) ................................................... 5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................ 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................ 3

*Baird v. Gotbaum*,
   662 F.3d 1246 (D.C. Cir. 2011) ............................................... 6

*Baloch v. Kempthorne*,
   550 F.3d 1191 (D.C. Cir. 2008) ........................................... 8, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................ 3

*Arbour v. Browner*,
   181 F.3d 1342 (D.C. Cir. 1999) ............................................... 9

*Burton v. Batista*,
   339 F. Supp. 2d 97 (D.D.C. 2004) ............................................ 6

*Celotex v. Catrett*,
   477 U.S. 317 (1986) ............................................................ 4

*Desmond v. Mukasey*,
   530 F.3d 944 (D.C. Cir. 2008) ................................................ 4

*Dudley v. Wash. Metro. Area Transit Auth.*,
   924 F. Supp. 2d 141 (D.D.C. 2013) .......................................... 8

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998) ......................................................... 9, 10

*Grier v. Casey*,
   643 F. Supp. 298 (D.N.C. 1986) ............................................ 12

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993) .......................................................... 6, 9

*Jones v. Air Line Pilots Ass'n, Int'l*,
    642 F.3d 1100 (D.C. Cir. 2011) ............................................................... 3

*Jones v. Castro*,
    168 F. Supp. 3d 169 (D.D.C. 2016) ........................................................ 3

*Kriesch v. Johanns*,
    468 F. Supp. 2d 183 (D.D.C. 2007) ........................................................ 5

*Lester v. Natsios*,
    290 F.Supp.2d 11 (D.D.C.2003) ............................................................ 11

*Magowan v. Lowery*,
    166 F. Supp. 3d 39 (D.D.C. 2016) ....................................................... 8, 9

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986) ................................................................................. 5

*Na'im v. Clinton*,
    626 F. Supp. 2d 63 (D.D.C. 2009) ........................................................ 6

*Nurriddin v. Bolden*,
    674 F. Supp. 2d 64 (D.D.C. 2009) ........................................................ 10

*Peters v. District of Columbia*,
    873 F. Supp. 2d 158 (D.D.C. 2012) ........................................................ 5

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000) ................................................................................. 5

*Richard v. Bell Atl. Corp.*,
    167 F. Supp. 2d 34 (D.D.C. 2001) ........................................................ 5

*Román v. Castro*,
    149 F. Supp. 3d 157 (D.D.C. 2016) ........................................................ 6

*Sanchez v. Tex. Comm'n on Alcoholism*,
    660 F.2d 658 (5th Cir.1981) ..................................................................... 12

*Sledge v. District of Columbia*,
    63 F. Supp. 3d 1 (D.D.C. 2014) ............................................................ 10

*Stewart v. Evans*,
    275 F.3d 1126 (D.C. Cir. 2002) ............................................................ 9

*Swann v. Office of Architect of Capitol*,
    73 F. Supp. 3d 20 (D.D.C. 2014) ........................................................ 10

iv

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) ................................................................................. 3

*Tex. Dep't. of Cmty. Affairs v. Burdine*,
  450 U.S. 248 (1981) ............................................................................... 12

*Townsend v. United States*,
  236 F. Supp. 3d 280 (D.D.C. 2017) ........................................................ 3

*Veitch v. England*,
  471 F.3d 124 (D.C. Cir. 2006) .............................................................. 10

*Wade v. District of Columbia*,
  780 F. Supp. 2d 1 (D.D.C. 2011) .......................................................... 11

Statutes

42 U.S.C. § 2000e ..................................................................................... 1

42 U.S.C. § 2000e-16(a) .......................................................................... 6

v

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RITA CLINTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civ. A. No. 19-01674 (RMC) |
| | ) |
| JAMES RICHARD PERRY, in his official | ) |
| Capacity as Secretary of the United States | ) |
| Department of Energy | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff Rita Clinton ("Plaintiff") brings this lawsuit against her former employer, the United States Department of Energy ("DOE" or "Defendant" or "Agency"), for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Specifically, Plaintiff alleges various work place incidents created a hostile work environment on the basis of her race, her sex, and reprisal for engaging in protected Equal Employment Opportunity ("EEO") activity. Plaintiff's allegations, however, fail to support any plausible Title VII hostile work environment claim. Accordingly, Defendant is entitled to dismissal or summary judgment on each of Plaintiff's claims.

**SUMMARY OF ISSUES**

Plaintiff's Complaint identifies nine events that she alleges are the basis for her hostile work environment claims:

> Event 1 – Plaintiff had to prepare her own expression of interest announcement for her current position.

> Event 2 - Plaintiff alleges her supervisor delayed and denied Plaintiff's detail.

Event 3 - Plaintiff's supervisor investigated Plaintiff's email account without Plaintiff's knowledge.

Event 4 - An employee in Plaintiff's office was detailed to another office.

Event 5 - Plaintiff alleges she was falsely accused of implementing a change to the ePerformance system.

Event 6 - After receiving a notice of proposed removal, Plaintiff was escorted from the building during the middle of the day.

Event 7 - Plaintiff alleges Plaintiff's supervisor failed to provide Plaintiff with performance standards and a performance plan for Fiscal Year 2017.

Event 8 - Plaintiff alleges Plaintiff's supervisor undermined Plaintiff's ability to manage the employees under Plaintiff's supervision.

Event 9 - Plaintiff alleges that Defendant challenged Plaintiff's claim for unemployment benefits.

*See* Compl. at 3-12.

Plaintiff's Complaint alleges that each of the events was motivated by all three of the following grounds:

(i)  hostile work environment based on reprisal in violation of Title VII;

(ii)  hostile work environment based on sex (female) in violation of Title VII;

(iii) hostile work environment based on race (African American) in violation of Title VII.

A review of the specific allegations reveal numerous deficiencies with Plaintiff's claims. For example, eight of the nine events for which Plaintiff seeks recovery did not severely alter the conditions of Plaintiff's employment and none of the alleged events created an abusive working environment.  Additionally, none of Plaintiff's allegations are sufficient to state a claim because all actions taken by DOE, and Plaintiff's supervisor in particular, were reasonable, non-discriminatory, and non-retaliatory acts.

2

## BACKGROUND

Defendant hereby incorporates the Statement of Material Facts and the exhibits thereto, filed contemporaneously with this Memorandum.

## LEGAL STANDARD

### Rule 12(b)(6) – Dismissal for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the complaint but disregards legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

In the context of an employment discrimination claim, a plaintiff who lacks direct evidence of discrimination "is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l,* 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002)). Nonetheless, the complaint must still meet the *Twombly/Iqbal* plausibility standard. *See Jones v. Castro,* 168 F. Supp. 3d 169, 184 (D.D.C. 2016). The "guiding lodestar" in assessing a motion to dismiss in an employment discrimination case is "whether, assuming the truth of the factual allegations, taken collectively, whether the inferences of discrimination drawn by the plaintiff are reasonable and plausibly supported." *Townsend v. United States,* 236 F. Supp. 3d 280, 298 (D.D.C. 2017).

3

**Rule 56 – Summary Judgment**

Where no genuine issue of material fact exists, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  Only a dispute over facts that are truly material to the outcome of the case should preclude summary judgment.  *Id*. at 248.  An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party.  *Celotex v. Catrett*, 477 U.S. 317, 322-323 (1986).  A fact is "material" if it has the potential to affect the outcome of a case.  *Id*.

Where, as here, the non-moving party bears the burden of proving a particular element and fails to establish that element, summary judgment is appropriate.  *Id*.  "The burden on the moving party may be discharged by showing that there is an absence of evidence to support the non-moving party's case."  *Id.* at 325 (internal quotation marks omitted).  Upon that showing, the burden shifts to the non-moving party to show that summary judgment is inappropriate.  *Id*.  To establish a dispute of material fact, the non-moving party must designate "specific facts showing that there is a genuine issue at trial."  *Id.* at 324.  The non-moving party cannot rely on conclusory allegations, generalizations, or speculation—the party must present "specific evidence or facts" for a reasonable person to find in their favor.  *Anderson*, 477 U.S. at 248.  As a general rule, the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

Notably, in all cases, a non-moving party who creates a genuine issue of material fact as to whether the employer has given the real reason for its employment decision will [not] always be deemed to have presented enough evidence to survive summary judgment.  *See Desmond v.*

4

*Mukasey*, 530 F.3d 944, 963 (D.C. Cir. 2008); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc).   Indeed, "'there will be instances where…the plaintiff has…set forth sufficient evidence to reject the defendant's explanation, [yet] no rational factfinder could conclude that the action was discriminatory.'"   *Id.* (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000)).

## ARGUMENT

### I.      Plaintiff Fails to State a Hostile Work Environment Claim as a Matter of Law

Plaintiff alleges hostile work environment based on her race, her sex, and reprisal for prior EEO activity, but Plaintiff cannot satisfy the legal standards to make a *prima facie* case of hostile work environment.

"A plaintiff may establish a violation of Title VII by proving that the employer created or condoned a discriminatorily hostile or abusive environment."   *Peters v. District of Columbia,* 873 F. Supp. 2d 158, 187-88 (D.D.C. 2012) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64-65 (1986)).   To prevail on a hostile work environment claim based on racial or sex discrimination or previous participation in protected activity, "a plaintiff must demonstrate' (1) that he or she suffered intentional discrimination because of [her protected class]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [protected class] in that position; and (5) the existence of *respondeat superior* liability.'"   *Richard v. Bell Atl. Corp.,* 167 F. Supp. 2d 34, 42-43 (D.D.C. 2001) (quoting *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081 (3d Cir. 1996)); *see also Kriesch v. Johanns*, 468 F. Supp. 2d 183, 187 (D.D.C. 2007).   A plaintiff must show that she "was subjected to retaliatory intimidation that was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working

environment.'" *Román v. Castro*, 149 F. Supp. 3d 157, 166 (D.D.C. 2016) (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011)).

Plaintiff's Complaint is deficient as a matter of law because it does not allow a plausible inference that either (1) she suffered intentional harassment on the basis of her status as an African-American, a woman, or her prior protected activity; or (2) that any allegedly discriminatory conduct was sufficiently severe or pervasive to constitute an objectively hostile work environment under the totality of the circumstances.

### A.    Plaintiff's Allegations are Insufficient to Permit an Inference of Discrimination

Title VII requires that all personnel actions "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Consistent with this principle of anti-discrimination, the Supreme Court has required that Title VII claims based on hostile work environment be the result of intentional "discriminatory intimation, ridicule, and insult." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Accordingly, a plaintiff must allege that any alleged hostile work environment was the result of discrimination based on a protected status. *See Burton v. Batista,* 339 F. Supp. 2d 97, 107 (D.D.C. 2004) (collecting cases for the proposition that "to sustain a hostile work environment claim ... [plaintiff] must produce evidence that [he] was discriminated against because of his status" (alterations in original) (citation omitted)); *Na'im v. Clinton,* 626 F. Supp. 2d 63, 73 (D.D.C. 2009) ("hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and plaintiff's membership in a protected class").

Here, Plaintiff does not identify any alleged hostile behavior that occurred *because* of her protected statuses of race, sex, and prior EEO activity. Plaintiff identifies the following alleged workplace incidents: (1) Plaintiff's supervisor began an investigation into alleged misconduct by

6

Plaintiff and reviewed Plaintiff's email account without Plaintiff's knowledge; (2) Plaintiff learned an employee was to be detailed to a different office within DOE; (3) Plaintiff was asked by her supervisor about a policy change in DOE's ePerformance system; (4) Plaintiff was escorted out of a DOE building at noon after receiving a notice of proposed removal; (5) Plaintiff's supervisor asked plaintiff to prepare an expression of interest announcement; (6) Plaintiff's supervisor did not provide Plaintiff with performance standards and a performance plan for FY2017; (7) Plaintiff's supervisor undermined Plaintiff's ability to manage her employees; and (8) Defendant challenged Plaintiff's unemployment claim. *See* Compl. at ¶¶ 22, 28, 30, 32, 35, 38-41, 44.  But nowhere in the list of workplace incidences in the Complaint does Plaintiff identify any linkage between the alleged incidents and Plaintiff's protected classes of race, sex, or prior protected activity.  There is nothing in the Complaint to suggest that any of the alleged workplace incidents occurred directly as a result of Plaintiff's race, sex, or prior protected activity.  In fact, Plaintiff does not even identify any prior protected activity in the Complaint to link to the alleged harassment other than a vague reference to "since August 2013."  *See* Compl. at ¶ 50.

Perhaps recognizing this deficiency in the hostile work environment allegations, Plaintiff attempts to meet her burden by adding conclusory statements to the counts in her Complaint that the alleged incidents were the result of Plaintiff's EEO activity, sex, or race.  (Compl. at 52, 66, 74).  But those conclusory statements are no more than the "threadbare recitals of the elements of a cause of action" that courts have determined to be not sufficient to state a claim for relief.  There is just no direct linkage in Plaintiff's Complaint between the alleged hostile behavior and plaintiff's protected classes.

In fact, there is only one workplace incident in the entire Complaint in which Plaintiff attempts to provide a linkage between the alleged action and her protected classes.  Plaintiff alleges

7

that males of a different racial background than Plaintiff were approved for detailed positions without delay during the same period in which Plaintiff's detail was allegedly delayed. *See* Compl. at 27. But that allegation is factually incorrect. Plaintiff herself admitted, in her EEO affidavit, that any male, non-African American SES employees were detailed years before the December 2016 through February 2017, time period in question in Plaintiff's Complaint. *See* Exhibit A at 6 (Final Agency Decision).

In the absence of any factual allegations giving rise to a plausible inference that Plaintiff was discriminated against because of her race, sex, or prior EEO activity, Plaintiff's hostile work environment claim must fail. *See Magowan v. Lowery*, 166 F. Supp. 3d 39, 70 (D.D.C. 2016) (dismissing a hostile work environment claim where plaintiff made no allegation at all linking any harassment to her [protected] status); *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (finding no hostile work environment after considering as part of the totality of the circumstances that "none of the comments or actions directed at [the plaintiff] expressly focused on his race, religion, age, or disability—unlike in some hostile work environment cases").

**B.      The Conduct that Plaintiff Complains of is Insufficient as a Matter of Law to Constitute an Objectively Hostile Work Environment**

Even if the alleged workplace occurrences could constitute intentional discrimination on the basis of Plaintiff's protected statuses, the Complaint fails to demonstrate that the alleged occurrences were "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Baloch,* 550 F.3d at 1201 (quoting *Harris,* 510 U.S. at 21).

As discussed, harassing conduct "must be sufficiently extreme to constitute an alteration in the conditions of employment so that Title VII does not evolve into a 'general civility code.'" *Dudley v. Wash. Metro. Area Transit Auth.,* 924 F. Supp. 2d 141, 152 (D.D.C. 2013) (quoting

8

*Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview."  *Harris,* 510 U.S. at 21.  In evaluating whether a plaintiff has established a hostile work environment claim, courts must consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* at 23.  Here, Plaintiff alleges no "physically threatening or humiliating" conduct (*id.*) and at most, complains of common workplace occurrences that do not constitute severe harassment.

Harassment is actionable only when it rises to the level of "permeat[ing] the workplace with *discriminatory* intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment," and thereby constitutes a hostile work environment. *Stewart v. Evans,* 275 F.3d 1126, 1133 (D.C. Cir. 2002) (emphasis added) (quoting *Arbour v. Browner*, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999); *Magowan*, 166 F. Supp. 3d at 69 (D.D.C. 2016).  Reviewing the alleged incidents of harassment in the Complaint both individually and collectively, none of the alleged incidents are severe enough alone or altogether to alter the conditions of employment and create an abusive working environment.

As a starting point, the majority of plaintiff's alleged harassing incidents, even if true, did not alter the conditions of Plaintiff's employment.  For example, Plaintiff alleges that her supervisor asked Plaintiff to prepare an expression of interest announcement, delayed posting the expression of interest, and then denied plaintiff's request for a detail.  Compl. ¶¶ 22, 25-26.  In addition, Plaintiff alleges that an employee's detail to a different office, a question from her supervisor about a policy change in DOE's ePerformance system, Plaintiff's supervisor accessing

Plaintiff's email account without notice to Plaintiff, Plaintiff's supervisor's failure to provide Plaintiff with performance standards, and Plaintiff's supervisor undermining plaintiff by directing Plaintiff's staff to bring questions to any executive within HC are all incidents of "harassment". Compl. at 30, 32, 35, 40, 41, 43.  None of those alleged incidents altered the conditions of plaintiff's employment and are merely day-to-day "work-related" actions.

In fact, similar work-related actions by supervisors have been determined by the courts to be "ordinary tribulations of the workplace" that are not sufficiently severe or offensive to create an abusive working environment.  *See Faragher,* 524 U.S. at 788; *Veitch v. England*, 471 F.3d 124, 130-31 (D.C. Cir. 2006) (finding non-selection for positions, assignment to undesirable duties, and being criticized by supervisors do not establish a hostile work environment); *Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 26 (D.D.C. 2014) (finding investigating an employee for suspected misconduct to not be grounds for a hostile work environment claim); *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 93-95 (D.D.C. 2009) (finding that allegations that management "passed him over for performance awards, lowered his performance evaluations, unfairly reprimanded and criticized him, made disparaging remarks about his EEO complaints, closely scrutinized his work, refused him a window cubicle, removed some of his duties, [ ] denied his requests to travel or otherwise failed to provide support for his work with staffing and funding[,] . . . opposed his career advancement[,] . . . denied many of his leave requests[,] and engaged in a series of discussions to end his eligibility for workers' compensation and to terminate his employment at NASA" did not amount to "intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment"); *see also Swann v. Office of Architect of Capitol*, 73 F. Supp. 3d 20, 32 (D.D.C. 2014) (explaining that "[c]ourts in this district consistently have found that these sorts of

employment-related actions" - referring to "work-related" actions such as a denial of overtime, termination of grace period for late arrival, and application of a civilian clothes decorating policy - "are not sufficiently severe or offensive to support a hostile work environment claim" (citing *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011)).

Additionally, even the only alleged incident that affected the conditions of Plaintiff's employment was a work-related action that does not rise to the level of harassment. Plaintiff was escorted from the building at noon after receiving a notice of proposed removal due to Plaintiff's misconduct. However that incident was a work-related action by its very nature, and it affected Plaintiff's employment only because Plaintiff received a notice of proposed removal. And the final incident, Plaintiff's allegation that Defendant challenged Plaintiff's unemployment claim, did not affect conditions of Plaintiff's employment because Plaintiff was no longer employed by Defendant.

Taken as a whole, all of the alleged incidents were workplace related and none of the alleged incidents were severe enough to create an objectively hostile or abusive work environment. Rather, in her Complaint, Plaintiff attempts to take incidents she subjectively believed to be discriminatory or retaliatory from her EEO complaint and uses them to create allegations supporting claims of harassment. But this jurisdiction frowns on plaintiffs who attempt to bootstrap their alleged discrete acts of discrimination and retaliation into a broader hostile work environment claim. *See Baloch*, 550 F.3d at 1191 (D.C. Cir. 2008); *Lester v. Natsios,* 290 F.Supp.2d 11, 33 (D.D.C.2003) (explaining that "[d]iscrete acts constituting discrimination or retaliation claims...are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult"). The allegations in Plaintiff's

Complaint do not meet the exacting standards for hostile work environment and as such Plaintiff fails to state a plausible claim for hostile work environment.

## II.   DEFENDANT HAD LEGITIMATE, NON-DISCRIMINATORY, NON-RETALIATORY REASONS FOR ITS ACTIONS

Assuming Plaintiff was able to establish a *prima facie* showing of hostile work environment for any of the incidents alleged in the Complaint, the burden of production shifts to DOE to provide legitimate, nondiscriminatory reasons for the challenged actions. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). DOE can articulate legitimate, non-discriminatory reasons for all of its alleged actions in this matter. The law is clear; an employer's reasons for its actions may be good, bad, mistaken, or even nonexistent, as long as the decision was not based on unlawful discriminatory criteria. *See Grier v. Casey*, 643 F. Supp. 298, 308 (D.N.C. 1986) (citing *Sanchez v. Tex. Comm'n on Alcoholism*, 660 F.2d 658, 662 (5th Cir.1981)).

### A.   Event 1 – Plaintiff Alleges Plaintiff Was Asked by her Supervisor to Draft an Expression of Interest Announcement

When Plaintiff expressed interest in leaving her Senior Executive Service ("SES") position within the Office of the Chief Human Capital Officer ("HC") to go on a detail to different DOE office, Plaintiff's supervisor, Ms. Tonya Mackey, told Plaintiff that her current role occupied a key executive position and performed an essential service within HC and, as such, could not be vacant during any period of Plaintiff's contemplated detail. *See* Exhibit 3 at 3, Question 17 (EEO Investigation Affidavit of T. Mackey (hereinafter "Mackey EEO Affidavit")). Ms. Mackey requested Plaintiff draft an expression of interest announcement for Plaintiff's current position. *See Id.* at 6-7, Questions 32-35 (Mackey EEO Affidavit). In addition, the Head of Policy position immediately below Plaintiff's position was also vacant at the time, and Ms. Mackey asked Plaintiff to prepare an expression of interest for that position as well because Ms. Mackey believed the same

candidates would apply for both positions and wanted to announce both position at the same time. *Id.* at 7, 8, Questions 42, 46 (Mackey EEO Affidavit). It was common practice within HC and HC's customers for incumbents or supervisors to draft their own expression of interests for detail opportunities and work with the Office of Corporate Executive Management within HC during the preparation process. *Id.*at 7, Question 36.

**B.    Event 2 - Plaintiff Alleges Her Supervisor Delayed and Denied Plaintiff's Detail**

The allegations that Ms. Mackey first delayed and then denied Plaintiff's detail is factually incorrect. Ms. Mackey requested Plaintiff to draft expressions of interest for Plaintiff's position and a position below Plaintiff within Plaintiff's group because Ms. Mackey wanted to post both detail opportunities at the same time. *Id.* at 7, 8, Questions 42, 46 (Mackey EEO Affidavit). Plaintiff provided a draft expression of interest to Ms. Mackey for Plaintiff's current SES position on January 4, 2017, but Plaintiff did not provide the draft expression of interest for the Deputy position until January 17, 2017. *Id.* at 8, Question 46 (Mackey EEO Affidavit). Ms. Mackey was out of the office during the week of January 17, 2017 but responded to Plaintiff with edits to the announcement on January 24, 2017. *Id.*; Exhibit 6 (January 24, 2017 Email from Mackey to Clinton). Both positions were advertised on January 26, 2017, and January 31, 2017. *See* Exhibit 7 (Detail Opportunity Director, Human Capital Policy Division); Exhibit 8 (Detail Opportunity Director, Office of Human Capital Policy and Accountability).

Plaintiff's potential detail to the Bonneville office was not denied but was put on hold due to the Presidential hiring freeze. *See* Exhibit 3 at 3, Question 17 (Mackey EEO Affidavit). On January 23, 2017, the President issued a Presidential Memorandum directing Federal agencies to implement an across-the-board hiring freeze during which vacant positions could not be filled and no new positions may be created except for positions necessary for national security or public

13

safety.  *See* Exhibit 4 (Memorandum from Secretary Perry titled "Implementation of Hiring Freeze).

C.      **Event 3 – Plaintiff Alleges Her Supervisor Investigated Plaintiff's Email Account Without Plaintiff's Knowledge**

Ms. Mackey learned that there was a backlog of employment suitability cases that had not been adjudicated within HC and was told by staff within HC and DOE's Office of Environment, Health, Safety, and Security that those cases were sent exclusively to Plaintiff.  *See* Exhibit 3 at 17, Question 14 (Mackey EEO Affidavit); Exhibit 9 (November 2, 2016 Email from Tyrone Eddins to Collier, Williams-Dixon, Jackson, Burnette, Clinton, cc, Donahoe, Lowery).  Ms. Mackey held a meeting with Plaintiff to ask whether Plaintiff received any suitability determination cases via email.  Plaintiff told Ms. Mackey that she had not received the cases.  *See* Exhibit 3 at 17, Question 14 (Mackey EEO Affidavit).  Because Ms. Mackey received conflicting information from Plaintiff and other employees, Ms. Mackey requested the Office of the Chief Information Officer conduct a search of Plaintiff's DOE email account.  *Id.*  The Office of the General Counsel approved the search request, and routinely authorizes similar search requests, when there is alleged misconduct by an employee.  *See* Exhibit 10 at 3, Question 18 (EEO Investigation Affidavit of S. Beard).

D.      **Event 4 – Plaintiff Alleges an Employee in Plaintiff's Office Was Detailed to Another Office**

Ms. Shannon Vaughns, a GS-14 human resources specialist within Plaintiff's chain of command, applied to a detail within HC's Office of Corporate Human Resource Operations and was selected for the detail.  *See* Exhibit 3 at 5, 10. Questions 24, 57 (Mackey EEO Affidavit).  Ms. Vaughns' detail was effective January 22, 2017, and thus was not impacted by the Federal

government-wide hiring freeze.  *See Id.* at 5, Question 24; Exhibit 12 (Notice of Personnel Action);

Exhibit 5 (Memorandum from Secretary Perry titled "Implementation of Hiring Freeze).

       **E.**     <u>**Event 5- Plaintiff Alleges She Was Falsely Accused of Implementing a**</u>
<u>**Change to the ePerformance System**</u>

On February 16, 2017, Ms. Mackey received an email from an HC customer asking about

an update to DOE's ePerformance system that two progress reports would not be required for

certain types of employees.  *See* Exhibit 3 at 11, Question 68, 70 (Mackey EEO Affidavit); Exhibit

13 (February 17, 2017, Email Chain from Mackey to Clinton).  Ms. Mackey forwarded the email

to Plaintiff and asked if the new policy was in effect, if a policy change had been drafted, and

whether the policy had been vetted through HC's customers.  *See* Exhibit 13 (February 17, 2017,

Email Chain from Mackey to Clinton).  Ms. Mackey did not "accuse" Plaintiff of implementing

any changes to the ePerformance system.  Ms. Mackey simply asked Plaintiff for more information

after one of the HC's customers inquired about the reviews because Plaintiff's office drafted policy

changes.

       **F.**     <u>**Event 6 – After Receiving a Notice of Proposed Removal, Plaintiff  Alleges**</u>
<u>**She Was Escorted from the Building During the Middle of the Day Rather**</u>
<u>**Than the End of the Day**</u>

On April 20, 2017, Ms. Mackey instructed security to escort Plaintiff from the Forrestal

building at DOE after Ms. Mackey provided Plaintiff with a Notice of Proposed Removal.  *See*

Exhibit 3 at 15, Questions 1-2 (Mackey EEO Affidavit).  There is no set DOE policy with regards

to the timing for when an employee served with a Notice of Proposed Removal should be escorted

from a DOE building.  *Id.* at 15 Question 1 (Mackey EEO Affidavit).  The timing in this situation

was determined by the availability of the DOE Headquarters security force to escort Plaintiff from

the Forrestal building.  *Id.*

G.     **Event 7 – Plaintiff Alleges her Supervisor Failed to provide Plaintiff with Performance Standards and a Performance Plan for Fiscal Year 2017**

SES employees create their own performance plans for review by the rating and reviewing officials.  *Id*. at 19-20, Question 27 (Mackey EEO Affidavit).  Ms. Mackey requested Plaintiff provide her with Plaintiff's performance plan on March 20, 2017.  *See* Exhibit 14 (March 20, 2017, Email Chain from Mackey to Clinton).  Ms. Mackey reviewed the plan, sent suggested changes to Plaintiff, and requested Plaintiff enter the draft plan into the electronic performance management system on the same day.  *See Id*.  Plaintiff did not load the plan into the electronic performance management system.  *See* Exhibit 3 at 19-20, Question 27 (Mackey EEO Affidavit).

H.     **Event 8 – Plaintiff Alleges her Supervisor Undermined Plaintiff's Ability to Manage the Employees under Plaintiff's Supervision**

Ms. Tiffany Wheeler, an employee within the HC office that Plaintiff served as Director, spoke with Ms. Mackey after Plaintiff raised concerns with Ms. Mackey over Ms. Wheeler's interactions with OMB on a call after direction from Mr. Kenneth Venuto, a senior leader within HC's front office, to participate in that call.  *See* Exhibit 3 at 22-23, Question 47 (Mackey EEO Affidavit); Exhibit 15 at 2-4, Questions 5-6 (EEO Investigation Affidavit of T. Wheeler (hereinafter "Wheeler EEO Affidavit")).  Ms. Mackey held a meeting with all the parties involved and told Ms. Wheeler and Plaintiff that all parties need to have open communication and that all HC leadership should be able to interact with, direct, and ask questions to subordinate employees within HC if needed.  *See* Exhibit 3 at 22-23, Question 47 (Mackey EEO Affidavit); Exhibit 15 at 2-4, Questions 5-6 (Wheeler EEO Affidavit); Exhibit 16 at 2-3, Question 5 (EEO Investigation Affidavit of G. Waldmann).

I.      **Event 9 - DOE Allegedly Challenged Plaintiff's Claim for Unemployment Benefits**

Neither Plaintiff's supervisor, Ms. Mackey, nor Plaintiff's former supervisor, Mr. Venuto, directed anyone at DOE to oppose Plaintiff's unemployment benefits claim.  *See* Ex. 3 at 24, Question 55 (Mackey EEO Affidavit); Exhibit 20 at 4, Question 17 (EEO Investigation Affidavit of K. Venuto).  Plaintiff submitted an Affidavit of Federal Civilian Service to the D.C. Department of Employment Compensation in which she listed the reason for separation as "misconduct – 'lack of candor.'"  *See* Exhibit 17 (Claimant's Affidavit of Federal Civilian Service).  The D.C. Department of Employment Benefits sent Plaintiff a determination letter stating that, under D.C. Code, Title 51-110(b), an individual shall be disqualified from receiving benefits if she was discharged from her most recent employer for misconduct in the course of the work.  *See* Exhibit 18 (Determination by Claims Examiner).  Plaintiff appealed the Department of Employment Services Claims Examiner's Determination and then withdrew the appeal.  Exhibit 19 (Final Order, District of Columbia Office of Administrative Hearings).

## CONCLUSION

Plaintiff cannot show that any of the common workplace occurrences constitute intentional discrimination or that such occurrences, as a matter of law, constitute an objectively severe or pervasive hostile work environment.  And the record is incontrovertible that DOE had legitimate, non-discriminatory, non-retaliatory reasons for its actions.  There is no plausible basis for Plaintiff's claim to proceed.  Accordingly, for the foregoing reasons, the Court should dismiss with prejudice Plaintiff's Complaint or grant judgment in Defendant's favor on all of Plaintiff's claims.

Respectfully submitted,

JESSIE K. LIU, DC Bar # 472845
United States Attorney
for the District of Columbia

17

DANIEL F. VAN HORN, DC Bar # 924092
Chief, Civil Division

/s/
PATRICIA K. MCBRIDE
Assistant United States Attorney
Civil Division
555 4th Street, NW, Room E-4106
Washington, DC 20530
Tel: 202.252.7123
Fax: 202.252.2599
Email: patricia.mcbride@usdoj.gov

*Attorneys for Defendant*

18